H. B. TRIMBLE *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed November 8, 1897.*

1. SPECIAL ASSESSMENTS—*effect of amendatory ordinance dividing prior assessment into installments.* Where an assessment ordinance provides for an improvement and the payment therefor in a single sum, the fact that, after the assessment is made in accordance with the estimate, the ordinance is amended so that the assessment shall be payable in installments, but without increasing the cost of the improvement, does not necessitate a re-assessment.

2. SAME—*when description of improvement is not uncertain.* The fact that an ordinance for the laying of a brick pavement provides that the brick shall be firmly settled by a roller of certain weight *or* a paving-ram, at the engineer's discretion, does not render uncertain the description of the nature of the improvement.

APPEAL from the County Court of Cook county; the Hon. R. H. LOVETT, Judge, presiding.

OSBORN & LYNDE, SMOOT & EYER, KNIGHT & BROWN, and OSCAR B. McGLASSON, for appellants.

J. D. ADAIR, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from the judgment of the county court of Cook county, confirming a special assessment levied against the property of appellants by the city of Chicago for the improvement of Buffalo avenue. The original ordinance was passed by the city council on May 4, 1896, and the report of the commissioners appointed to make an estimate of the cost of the improvement was approved May 18 following, their estimate being $58,878.04. On November 16, 1896, an amendatory ordinance was passed providing that the assessment should be collected in five installments.

It is first contended by appellants that the amendment of the ordinance necessitated an abandonment of

the original assessment and made a re-assessment neces-
sary. But we think there is no merit in this position.
The original ordinance provided for the improvement and
the payment therefor in a single sum. By the act of 1893
the city council had the power to provide, by ordinance,
"at any time prior to commencing the collection thereof,"
that the payments should be collected in installments.
(Starr & Curtis' Stat.—2d ed.—p. 855.) The amendment in
no way attempted to vacate the assessment, but simply
stated how it should be paid. Appellants fail to show
that the amendatory ordinance in any way increased the
cost of the improvement, and hence a new assessment
was unnecessary. If the amendment had been in the
nature of a separate ordinance it would scarcely be con-
tended that it in any way vacated the assessment pre-
viously made, and we are clearly of the opinion that as
an amendment it had no greater effect.

It is next urged by appellants that the report of the
assessing committee and of the estimating committee
showed that they included in their estimate and assess-
ment the cost of filling and paving a strip sixteen feet
wide in the middle of the street, occupied as a railroad
right of way. The report of the assessing committee is,
that the city council have "passed an ordinance pro-
viding that Buffalo avenue (roadway sixteen feet wide
on each side of a space sixteen feet wide in the middle
thereof occupied as railroad right of way) * * * be
curbed with curb walls, filled with earth, and paved with
vitrified brick upon a concrete foundation." The report
of the assessing committee is in substantially the same
words. The language of the ordinance is, that the road-
way, being forty-eight feet in width, be curbed with curb
walls, and that said roadway "between said curb walls,
(except the space sixteen feet in width in the middle of
said roadway occupied as railroad right of way,) said
roadway being sixteen feet in width on either side of said
space sixteen feet in width occupied as railroad right

of way," be filled, etc.   The roadway to be improved is spoken of by the assessing and estimating committee as being "sixteen feet wide on each side of a space sixteen feet wide in the middle" of Buffalo avenue, which clearly means the same roadway as that described in the ordinance although expressed in somewhat different language. It cannot be said that the assessment and estimate included the strip covered by the railroad right of way.

The third contention is, that the ordinance is uncertain in its description of the nature, character and location of the improvement, because it provides that the pavement, when laid, shall be rolled with a roller of certain weight or rammed with a pavement rammer of certain description.   The manner in which the pavement is to be put down is very minutely described in the ordinance, and it is then provided:   "The brick, when set, shall be rolled with a roller of five tons weight until the bricks are well settled and made firm, or, if the engineer shall direct, the bricks, when set, shall be rammed two or more times.   *   *   *   When the bricks are thoroughly bedded the surface of the pavement must be true from grade to crown."  The specification is that the brick shall be firmly settled, and the means by which it is to be done are pointed out,—either by a roller or a pavement-ram. There is no uncertainty as to the character of the work, but simply as to the manner in which it shall be accomplished.   It might be, and doubtless is, true, that particular parts of the pavement could not be rolled, and yet the same purpose—namely, to bring the surface of the pavement to a proper level and firmly settle the brick,— be accomplished by the use of the ram.   We think this objection to the ordinance is also without force.

From an examination of the whole record we find no error therein, and the judgment of the county court will be affirmed.                            *Judgment affirmed.*